**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK, NEW JERSEY   07101**

2019 OCT 23 P 3: 20

| | |
|---|---|
| JOEL E. DURMER: MITCHELL D. : | |
| YASUK: FRANK J. SANCHEZ: : | |
| JOHN M. BANDA: CARLTON E. : | |
| GREEN: BRUCE L. JENNINGS: : | |
| JAMAR BURNEY:  and all others : | Civil Action No. _19-19259(ES)_ |
| similarly situated, : | |
|                 Plaintiffs : | Jurisdiction: |
|                           : | 42 U.S.C.A. §1983 et seq. |
|                           : | |
| vs.                       : | |
|                           : | |
|                           : | COMPLAINT |
| MARCUS O. HICKS, COMMISSIONER : | |
| NJDOC: CAROLE JOHNSON, : | |
| COMMISSIONER, NJDHS: SHEREFF : | |
| ELNAHAL, COMMISSIONER, NJDOH : | |
| GEORGE ROBINSON, ADMINISTRATOR: | |
| ADTC: MARC SIM, ASSISTANT : | |
| SUPERINTENDANT, ADTC: MERRILL : | |
| MAIN, PHD.,STU CLINICAL : | |
| DIRECTOR: DOREEN STANZIONE, : | |
| STU DEPUTY CLINICAL DIRECTOR: : | |
| D. SIMMS, STU RECREACTION : | |
| DIRECTOR: A. HALPER, DHS/DOH : | |
| EMPLOYEE: C. ARMOUR, DOH/DHS : | |
| EMPLOYEE: : | |
|                 Defendants : | |

## PRELIMINARY STATEMENT

This is an action undertaken by the plaintiffs in which the

Plaintiffs seek to have this Court declare unlawful and enjoin certain

policies and practices of the defendants, which plaintiffs allege

violate their right to safe, non-punitive conditions of commitment,

adequate treatment for any named condition, as well as free exercise

of religion.   This action arises under 42 USCA §§1983 and 1988;

the Federal DEclaratory Judgment Act, 28 USCA §§2201 and 2202; the

Religious Land Use and Institutionalized Persons Act, 42 USCA §§

2000bb and 2000cc; and the First, Fourth, Sixth, Seventh, eighth,

-1-

Ninth and Fourteenth Amendments to the United States Constitution.
Plaintiffs also apply for class status.    Class Status should be
granted because there are common issues of fact and law that apply
across the spectrum since all prospective class members are residents
of the STU, and are all affected equally and communally by the actions
of the defendants and their policies.

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court pursuant to 28 USC§1331
which authorizes original jurisdiction on the district court of all
civil actions arising under the Constitution, laws and treaties of
the United States.    JUrisdiction is also conferred upon this Court
pursuant to 28 USCA §1343(a)(4) which grants original jurisdiction
to the district court of any action to recover damages or to secure
equitable or other relief under any Act of Congress providing for
the protection of civil rights;    further, the Unites States District
Court for the District of New Jersey is the judicial district where
the events or ommisions giving rise to plaintiff's claims occurred,
and also is the district in which all the named defendants reside
and/or where they may be served with process, and therefore is the
proper venue for this action pursuant to 28 USCA §1391(b).

2. No previously dismissed federal complaints as frivolous.

3. Present Place of commitment:    Special Treatment Unit
                                    8 Production Way, PO Box 905
                                    Avenel, NJ   07001-0905
                                    732-574-2250

Plaintiffs:

4.    a] Joel E. Durmer, #677
         Special Treatment Unit
         Avenel, NJ   07001

      b] Mitchell D. Yasuk, #672
         Special Treatment unit
         Avenel, NJ   07001

      c] Frank J. Sanchez, #387
         Special Treatment Unit
         Avenel, NJ   07001

      d] John M. Banda, #351
         Special Treatment Unit
         Avenel, NJ   07001

      e] Carlton E. Green, #445
         Special Treatment Unit
         Avenel, NJ   07001

      f] Bruce L. Jennins, #277
         Special Treatment Unit
         Avenel, NJ   07001

      g] Jamar Burney, #647
         Special Treatment Unit
         Avenel, NJ   07001


Defendants:

      a] Marcus O. Hicks, Esq.
         Commissioner of Corrections
         State of New Jersey
         PO Box 863
         Trenton, NJ   08625-0863

This defendant is charged with protecting the public, and provides

for the custody, care, discipline and training of persons committed

to correctional facilities or parole; prepares prisoners for release

and reintegration into society.  (NJSA 30:1B-1).  This defendant

has utterly failed to discharge his duties as they relate to the

residents of the STU.

      b] Carole Johnson
         Commissioner, Dept. of Human Services
         Trenton, NJ   08625

This defendant is charged with administrating and establishing policy

for governing the State's charitable, medical and relief institutions, noninstitutional facilities and program services.  (NJSA 30:1-2.3). This defendant has not followed up on the policies implemented at the STU, nor seen to the training of those individuals charged with the delivery of services to the residents of the STU.

    c] Shareef Elnahal, Commissioner
       NJ Dept. of Health
       Trenton, NJ   08625

Oversees and inspects hospitals and health care facilties; administers state and federal financial assistance to hospitals, local health departments and home/community health agencies; conducts programs to detect and immunize from commincable diseases; repository for all state health records including vital statistics; educates health professionals (although licensing is done through Dept. of Law and Public Safety); also srudies the delivery of health services, the problems of alcohol and drug abuse, enviromental and occupational hewalth issues, and other areas of concern (NJSA 26:1A-37).    Therefore, after the nmerger of the NJ Dept. of Human Services with the NJ Dept. of Health,, this individual is charged with oversight dealing with the Patient's Bill of Rights, as well as the staffing and training to meet the neds of the 400+ residents presently committed to the sTU.    Policies are put in place without the consideration of those they affect, and now refuses to properly enforce the Patient's Bill of Rights.

    d] George Robinson, Administrator
       Adult Diagnostic & Treatment Center
       Avenel, NJ   07001

This defendant is the administrator of the ADult Diagnostic and Treatment Center, which has direct day-to-day oversight of the facility known as the sTU.    It is primarily staffed by Corrections Officers

who are trained in the care, custody and control of inmates/prisoners as well as making sure that the physical plant is kept up to proper operating standards.   His supervision has been less than involved, leaving the day-to-day running to the follwing defendant.

    e] Marc Sim, Asst. Supt.
       Adult Diagnostic & Treatment Center
       Avenel, NJ  07001

As the assistant superintendant in charge of the day-to-day operations of the STU, Marc Sims has been woefully inadequate.   Buildings are in a gross state of disrepair; arbitrary decsions are made about visitors subject to the NJ Administrative Code 10A, which is inapplicable in this institution; he disregards facts about certain conditions, and is misleading in others; critical services are withheld from the resident population, especially on the South unit, where the residents who are not on MAP (Modified Access Program) are being ostracized, and are being deprived of the normal activities and services open to all other resident.

    f] Merrill Main, PhD.
       Clincal Director, STU
       Avenel, NJ  07001

As the clinical director, Merrill Main PhD. is responsible for each and every decision made regarding treatment andits delivery to those residents committed to the sTU.   His decisions are capricious, arbitrary and illegal, impacting therapy, the lives of the residents, and have unconstitutionally impacted protected liberty insterests for the residets.

    g] Doreen Stanzione, PhD.
       Deputy Clinical Director, sTU
       Avenel, NJ  07001

As deputy clinical director, Doreen Stanzione is directly responsible

for implementing the polcies dictated by Merrill Main, PhD., without
doing any evaluation of the policies themselves or how they impact
residents at the STU.

      h] D. Townsend
         Recreactional Director, STU
         Avenel, NJ  07001

As recreation supervisor, Ms. Townsend is directly responsbnile for
the delivery of recreational activities and their direct delivery to
the sTU residents.   In conjunction with Marc Sims, Ms. Townsend has
successfully isolated and ostracized the residents of the South unit and
created a modren-day therapeutic administrative segregation by refusing
to permit the delivery of recreational services to the South unit.   This
violates plaintiff's Equal Protection rights.

      i] A. Halper
         Recreational/Therapeutic Staff (DOH/DHS)
         As an employee of the DOH/DHS, working as a recreational and

Therapeutic staff  employee, Ms. Halper carries out orders from senior
staff that imp act resident's lives unneceearily and keeps them from
enjoying the exact same opportunities, rights and privileges that the
bulk of the residents enjoy.   She improperly decides who receives what
level of pay, who is assigned to certain jobs (regardless of training)
where she has absolutely no expertise.

      j] C. Armour
         DOH/DHS Recreational/therapeutic employee
         STU, Avenel, NJ  07001

AS a supervisor, Ms. armour makes daily decisions regarding the delivery
of services and job placements that are arbitrary, capricious, spiteful
and unnecessarily hurtful.

5. We have previously sought both informal and formal resolution/relief

from these administrative officials regarding the acts complained of
in our statement of reasons/claims.   WE have had face-to-face
discussions, made official inquiries, filed official grievances and
sent certified letters to try and obtain relief.   All have been
systematically ignored.   These attempts are attached for the Court's
convenience and viewing.

## CASE LAW RELIED UPON

PELL vs. PROCUNIER, 417 US 817, 94 S.Ct. 2800, (June, 1974)

RAMOS v. LAMM, 485 F. Supp. 122; 639 F.2d 559 (10th Cir. 1979)

ESTELL v. GAMBLE, 429 US 97; 97 S.Ct. 285 (Nov. 1976)

TURNER v. SAFLY, 482 US 78; 107 S.Ct. 2254 (June, 1987)

WOJTCZAK v.CUYLER, 480 F.Supp. 1288 (ED-PA, December, ±979)

MOORE &. HYSLER  v. BROWN , 05-2179 (JCL) 2:07-cv-01212 DMC-MF 3/2008

BELL  v. WOLFISH 441 US 520; 99 S.Ct. 1861 (May, 1979)


Plaintiffs cite the above case law in support of their contentions
that NJDOC-NJDOH/DHS are using the present condition to justify their
claims of "legitimate penological interests".   However, that term
presupposes that the residents of the STU are here to be punished.
The custodial part of any confinement has already been served, therefor
the is no legitimate penolgical interest to be protected.   The state
agencies charged with the operation of the STU have far exceeded the
scope and authority, and only this Court can rule that they contain
and restrict themselves to those actions to that which they can legit-
imately lay claim to before this Court., those which are constitutionally
permissible and appropriate for an institution suchas the sTU.

## Table of abbreviations used in the present complaint

| | |
|---|---|
| ADTC: | Adult Diagnostic & Treatment Center |
| STU: | Special Treatment Unit |
| DOC: | N.J. Department of Corrections |
| DOH: | N.J. Department of Health |
| DHS: | N.J. Department of Human Services |
| DURMER: | Plaintiff Joel e. Durmer |
| Yasuk | Plaintiff Mitchell D. Yasuk |
| Sanchez: | Plaintiff Frank J. SAnchez |
| Banda: | Plaintiff John M. Banda |
| Green: | Plaintiff Carlton E. Green |
| Jennings: | Plaintiff Bruce L. Jennings |
| Burney | Plaintiff Jamar Burney |
| Hicks: | Defendant Marcus O. Hicks, Esq. |
| Johnson | Defendant Carole Johnson |
| Elnahal: | Defendant Shereff Elnahal |
| Robinson: | Defendant George Robinson |
| Sim: | Defendant Marc Sim |
| Main: | Defendant Merrill Main |
| Stanzione: | Defendant Doreen Stanzione |
| Simms: | Defendant D.Simms |
| Halper: | Defendant A. Halper |
| Armour | Defendant C. Armour |
| "Main" | Housing units of North, South, East & West |
| "Annex" | Building which houses four dormitories/medical |
| TR: | Treatment Refuser; someone who is not actively participating in the prescribed therapy program |

Statement of Claims:

Plaintiff Joel E. Durmer:

Durmer states that DOC has violated his rights in the following manner;
DOC, citing the Patriot Act, has denied Durmer's wife of more than
40 years entrance to the facility for visitation purposes.   This
is because Durmer's wife's N.J. Driver's License has, as an official
address, a P.O. Box on it rather than a street address.   This circum-
stance is due to being "hacked" and having her identity stolen.
The N.J. Secretary of State identified Durmer's wife, Carol, as a
legal resident of New Jersey, and authorized her use of the post
office box as a legal address on her driver's license.   She has
visited numerous times with that driver's license since 2011, but
as soon as Durmer was designated a TR (Treatment Refuser), she was
denied entrance and visitation.   DOC cited "legitimate security
and penological interests" which do not in fact exists.   They have
further violated Durmer's rights by refusing to allow carbon paper
into the institution, which forces Durmer to submit his documents
and legal arguments for photocopying at 10¢ per page; further, Durmer
is being treated by a physician (Sumalatha Mannava, MD) whom he is
suing for a medical tort; further, DOC is being excluded from the
practice of his faith because dOC, in cooperation with DOH-DHS, to
isolate the South unit, has in effect, deprived him of religios
liberty; further, Durmer, a cardiac patient (triple bypass) is being
sleep-deprived by the authorized actions of the third shift officers,
working from 2200 - 0600, by shining a light in his face at all hours
of the night, as well sa banging on his door "to see if you're alive".
This violates the Geneva conventions, of which the United States

is a signatory power, which guarantees all prisoners and 'detainees'
eight (8) hours of **uninterrupted rest**.

Durmer's rights are being violated by DOH-DHS in the following manner:
while Durmer is not committed, meaning committed for treatment, but
only for an evaluation, DOH-DHS personnel have designated Durmer
as a "Treatment Refuser" because he refuses to give up his rights.
At no time has Durmer ever refused to comply with treatment directives
except where they refer to the "index offense" or predicate offense.
Durmer is presently waiting for scheduling of a motion in Ocean County
for a New Trial based on New Evidence and Prosecutorial Misconduct
(Brady violations).   That motion contains documents from the State
of Maine, wherein he is cleared of any wrongdoing whatsoever.   Durmer
has asked the 'treatment team' and the TPRC the following unanswered
question: if he is not a sex offender, why would he take sex offender
specific treatment?   The SVPA [NJSA §30:4-27.24 et seq.], while
being ruled constitutional, is unconstitutional in its application
to the residents here.   It is a primitive, poorly designed, resemb-
ling, at best, a simplistic program of behavior modification, not
Cognitive Behavioral Therapy, as they claim.   Durmer has an advanced
degree in psychology (educational), but underwent CBT during the
1980s for PTSD, a direct result of intense combat in Southeast Asia,
as well as molestation at an early age, and active alcoholism from
1968 through November, 1975.   Durmer recognizes CBT as well due
to his Virginia Certification as an Alcohol Counselor.   Further,
DOH-DHS has excluded Durmer from any participation in holiday cele-
brations because he is a TR; further, in conjunction with DOC, DOH-
DHS has helped to create a civilian Administrative Segregation, in

an attempt to force residents to disclose that which is protected
by the U.S. Constitution.    In Durmer's case, the DOH-DHS is trying
to overcome the admonitions of the N.J. Appellate Division, the PJCrP
from Ocean County, and three (3) lawyers who have advised him to
maintain his silence.    Durmer has submitted authenticated documents
from another state which are clearly exculpatory;  further, in
cooperation and combination with DOC, DOH-DHS have conspired together
to reduce the resident's payroll by as much as eighty (80) percent.
They "suggest" that before a resident may be discharged, he sould
have a minimum of between eight and ten thousand dollars saved up
[$8000 - $10000].    This can be found on page 19, of the Resident
Guide to the STU, May 2, 2019 - 3 months after the decision to reduce
wages.    By this action, Main and DOH-DHS has unconstitutionally
impacted a constitutionally protected liberty interest.    Further,
DOC has impacted durmer's health by continuing to serve "prison"
food, which is poor in nutrition, and has caused not only Durmer,
but also Plaintiffs Jennings and Sanchez to develop Adult-onset Type
Two diabetes.    Before his incarceration, Durmer had low blood sugar,
low blood pressure and low pulse due to his activities in the armed
forces, which necessitated a great deal of running long distances.


### Plaintiff Mitchell D. yasuk


Yasuk states that DOC and DOH-DHS have violated his rights as the
following states: DOC employees physicians obtained through their
contract employee, Rutgers University Health Care.    The doctor on
duty here since July of 2015 has been Sumalatha Mannava, MD, who

has refused to prescribe Motrin (ibuprofen), a non-narcotic pain reliever, advising Yasuk to take Tylenol instead.   AS noted in the medical records of Yasuk, he cannot take Tylenol because it causes him to have kidney stones.   Mannava further states that Motrin is expensive and uncalled for.   Further, the medications I keep with me, called KOPs, are rarely here when one prescription expires. In March of 2019, Yasuk was rushed to Robert Wood Johnson Hospital due to a heart abnormality, and DOC medical never sent Yasuk's records to the care provider.   This caused them to not know what to give me because they couldn't be asked to take the word of a layman. From June 18, 2019 through September 1, 2019, I was not permitted to use my lymphadema pump and compressor boots I was supposed to use, but instead the medical people used una-boots for the swelling in Yasuk's legs.   Yasuk is exceptionally large (6" tall, 350 lbs.) yet DOC insists on handcuffing and shackling Yasuk, who cannot walk and is wheelchair bound.   He is a civilian, not a prisoner, yet they insist on putting him in a transportation vehicle that has no seat belts and is not designed to accomodate Yasuk.   Only recently has Yasuk been transported in a "wheelchair van" rather than the "dog vans" they usually believe, sometimes having state prisoners in them as well.

AS Durmer has been placed on TR status for not speaking about the index offense that brought him here to the STU, Yasuk has exactly the same set of circumstances, from the same county.   Presently, Yasuk has pending a petition for WRit of habeas Corpus, and the case number is 3:18-cv-10165-PGS.   Yasuk is only following the edicts of the REsident Guide published on May 2, 2019.   Yet Yasuk is made a TR for asserting his rights,as if to punish him.

Plaintiff Frank J. Sanchez


SAnchez states that DOC, through Rutgers University Health Care,
has violated his rights as follows: In 2007, Sanchez was told by
doctors at St. Frances Medical Center, Trenton, that he needed surgery
on his right shoulder to repair major damage inside it, but the STU
rerfused to send him for this operation, citing expense for someone
of SAnchez' age (at the time, aged 58).   On August 23, 2017, I was
assisted by attorney Charles H. Landesman, of Kearny, NJ, in obtaining
my sought-after medical records.   I intend them to be used in two
ways: one, to help me show the STU medical department that I still
needed the surgery; and two, to use in court, to prove I couldn't
have committed the crimes I was accused of.   When I tried to use
them in court, I was removed from court.

Sanchez further states that DOC, through its contract employee
Rutgers University Behavioral Health Care violated his rights be
refusing to follow their own stated ruled regarding release from
the STU.   Sanchez was ordered not to speak in court or he would
be removed.   Somehow, DOH-DHS managed to confuse my case with that
of John Sanchez, #587, and our records are jumbled together, which
is being used against me.   In 2018, Sanchez was told to take what
is known as a "stipulated polygraph" in order to secure his release.
He did so, passed, but is still here because DOH-DHS refuses to honor
the agreement.   On May 18, 2018, a state psychiatrist, Dr. Foley,
testified before the commitment judge that he could think "of no
reason" SAnchez should be kept at the STU and warehoused here.   The
judge commented that the STU and its program had completely failed
Sanchez in every respect.

## Plaintiff John M. Banda

John M. Banda states that DOC, through their contrct employee, Rutgers University Health Care and the physcian hired to treat residents, has refused to treat Banda's medical problems in a consistent and proper manner.   This has compromised Banda's health, including weight gain.   He had been able to order Lipozene, on which he lost more than 100 pounds, but is now disallowed without exaplanation.   Like the other plaintiffs, Banda has been forced to live in prison-like conditions that are so bad the civilian staff and DOC staff are advised to drink bottled water since the water here is unpotable.   Residents are not offered that selection.

Further, Banda's constitutional rights are being violated by DOH-DHS in the following manner: Banda has not been convicted of a sex offense, yet he is still being held in civil commitment, which amounts to false imprisonment, thus being classified as a TR.   If he did not commit a sex offense, why is he here and why would he take sex offender therapy if he hasn't committed a sex offense.

## Plaintiff Carlton E. Green

Green states that OH-DHS are violating his rights as follows: Green is being forced to attend process groups as a sex offender when the predicate/index offense was vacated as of august 14, 2014, more than 5 years ago.   In turn, he was put on the South unit as a TR, even though the reason (sex offense) for civil commitment no longer exists, and in no way does Green fit the criteria for civil commitment without the index offense.   The N.J. Attorney General refuses to answer the petitions filed on Green's behalf, asking for an answer: why is still being held in civil committment when the offense no longer exists? Commitment counsel has been entirely ineffective from the beginning.

Plaintiff Bruce L. Jennings

Jennings states that DOC has violated his rights in the following ways: They have caused Jennings to become an Adult Onset Type 2 diabetic due to poor diet; further, throught their contract employee Rutgers University Health Care, Jennings has suffered a two-year delay in surgery to correct cataracts, now in both eyes.   Numerous sick call slips have gone in, but no answer as to when it might be done, even if it causes blindness in a 70 year-old man.   Further, the poor diet served at the STU is mainly starch (potatoes, bread, rice, etc.) combined with fruits in heavy syrup, which can only lead to enormous weight gain, coronary artery disease, and other realted ailments which Jennings now suffers from.

Jennings further states that DOH-DHS has violated his rights in the following manner: the TPRC relies on outdated, false, andmisleading information on which they base an alleged treatment plan; their evaluations are meticulously and oppressively prepared in that little or no positive feedback is given, and is based on subjective data; they infer that Jennings must in some way fabricate events that allign with their idea of what occurred, which means forfeiting one right to "earn" another.   DOH-DHS is collaboration with DOC have refused to let Jennings, or any other plaintiff to participate in anyholiday celebrations/festivities, instead, hand-picking those they want to attend.   This is a manner of discrete punishment they believe wil be ignored and/or accepted.

families and patients affected by these policy changes is unconstitu-
tional.

Further, Burney's Constitutional rights to avoid illegal detention
have been violated under NJSA §30:4-27.24 et seq.   To be returned
or brought to the sTU, you must be examined by two independant doctors
and the following must be found: 1] that the person has committed
what is known as the index offense under the act; 2] that the person
suffers from a mental disease or disorder; **and** 3] that the person
is **highly likely to sexually reoffend,** or in simpler terms, commit
a new sex offense if released.   Burney was a juvenile when convicted
of a sex offense; hewas released on parole.   While on parole, Burney
was arrested for a weapons offense.   At the conclusion of that term,
instead of being released back to parole, Burney was brought to the
STU, and has been here ever since.   No new sex offense, yet he is
in custody as a SVP without any supporting documentation.

### BROADER RANGE VIOLATIONS THAT AFFECT EVERY RESIDENT

Broader range claims regarding the extended class of unnamed plaintiffs
regarding issues germane to the issues of the named plaintiffs and
related to the present and continuing violations of their U.S.
Constitutional Rights, as previously enumerated.

1] The salary structure changes unconstitutionally impact a protected
constitutional liberty interst.   As previously stated, on page 19
of the STU Resident Guide published by DOH-DHS, residents are told
to save up six to eight months of espense money for release, and a
modest amount of $8000 to $10000 is "suggested".   At the same time,
residents have had their salaries cut by 80%.   How do they save that
much cash when they're not making it?

Before the salary changes, the following was in effect across the board:

Phase I:                          1 nour of work per day;

Phase 2:                          2 hours of  work per day

Phase 3:                          3 hours of  work per day

Phase 4:                          4 hours of  work per day

Phase 5:                          5 hours of  work per day

Now, the pasy scale has been downsized by 80%.   Phase 1 gets one work

hour per week; phase 2 gets 2 hours per week; phase 3 gets 3 hours;

phase 4 gets 4 hours, and phase 5 gets 5 hours.   Phase one makes $40

per month; phase 2 makes $80 per month; phase 3 makes $120 per month;

phase 4 makes $160 per month, and phase 5 makes $200 per month.   This

leaves residents qualified to go home unable to do so.   They are then

discouraged from seeking help from the Special Response Units of each

county's welfare board.

2] REgardless of the state's position that the Seventh Amendment does

not apply to civil committees or detainees, the state cannot simply

ignore/obviate the United States Constitution.   Many have asked for

a jury trial, but none have been granted.

3] The entire complement of residents on the South unit have been

isolated and ostracized, and have had their human dignity stripped

from them, sometimes by residents who are predatory and look for those

to exploit.   They are prevented from participating in any events that

the Annex, North, East and West unit participate in routinely.   All

holiday celebrations have been excluded.   In this event, the daily

enforcement of the SVPA is unconstitutional in its application and

implementation.   They - DOC/DOH-DHS - have turned the South unit

into an Administrative Segregation Unit.   We are told to consult
the STU Resident Guide, produced by DOH-DHS, or the STU REsident Guide
put out by DOC; however, DOC has never put out a resident guide, making
up rules daily to suit their needs.   An especially good example of
this is the institutional mail room, where residents' mail is received.
They tell us what colors we may wear, how many of each we can have,
and what art supplies, for example, of what we may order.   They even
refuse to deal with UPS, or other carriers, for returned merchandise,
making residents pay first class postage rates, which are exorbitant
over 3 ounces.   There have been instances where someone, for spite,
mails contraband of some sort (tobacco, drugs, alcohol, a cell phone,
etc.) to a resident, who is then immediately locked up on TCC status,
not knowing why.   They are later told that contraband had been found
in his package, but he never had constructive receipt of it, and gets
locked up anyway for several months.   DOC passed, without publication
or comment to and by the general public and those directly affected,
a new regulatory part of NJAC 10A which allows them to implement any
part of NJAC 10A in relation to residents.

4] Religious wxclusions under DOC/DOH-DHS mean that residents are
forced to choose the type of religious activity or worship that they
decide to provide, whether or not it is your form of personal worship.
Under the REligious Freedom and Restoration Act, 42 USCA §2000bb, it
is a gross violation of the First Amendment to deny a civilian the
opportunity to practice their own faith, as their faith prescribes
it is a violation of the very first amendment to our Constitution,
known as the Bill of Rights.   No law, statute, policy or code may
ever take the place of the First Amendment.   It is inexcusable.

5] Not withstanding the assertions of the Clinical Director, Main,
the "therapy" offered at the STU is **not** based on Cognitive Behavioral
Therapy (CBT), but rather a primitive and poorly desgined/implemented
Behavior Modification program.   Residents cannot even object to what
is being offered as therapy because the INTERAGENCY OVERSIGHT BOARD
(IOB) is an illusion.   Residents have no representation or input
on it or to it, and no comments are sought by the administrations
beforebefore they implement their decisions.   The resident welfare
account isn't used for the resident's benefit.   Resident-owned
appliances need to be replaced, but there's "no money" for that.

6] By using prison food, which are, at best, poorly designed nutrition-
ally, DOC has created its own subset of Type II Adult Onset Diabetics.
Further, the water is not potable, medical follow-ips are rare, there
are no emergency lights on the wings, and there are no emergency defib-
rilators on any wing in case of a cardiac emergency.

7] Needed repairs to the physical plant are sporadic at best, leaving
residents with cold water during the winter and little heat.   Because
the North, South, East, WEst and Annex units are sealed - read no
windows that open - the air conditioning is a must, but it often non-
functional, as is the heat.

8] The DOC uses what are euphimistically called "dog vans" to transport
residents to any outside appointments (court, medical, etc.).   There
are no seat belts; elderly patients are forced to climb into the van
which many cannot do; the space allocated for each resident is minimal
at best, and there is barely room to breathe.   If those residents
cannot climb into or fit in the van, they are forced to miss critical
medical appointments.

9] The DOC routinely "locks down" the entire facility should there be a medical emergency or disturbance on another unit, regardless of how major or minor.   They have locked down the entire STU when a "code" is called ay ADTC or East Jersey State Prison.   They are swift to call a lock-down, but extremely slow to lift it, making the residents wait another hour - hour and a half.   Sometimes residents areleft locked in for hours, while corrections officers do paperwork.

10] The DOC, citing "legitimate penological interests" and their unconstitutional application of NJAC §10A on the residents, engage in daily sleep deprivation during the 3rd shift (2200 - 0600) by shining their flashlights into resident's cells, in their faces to "check to see if you're alive".   They also knock/kick and/or bang on the doors to wake residents up.   The Geneva Conventions expressly forbid this.

## RELIEF SOUGHT:

Plaintiffs respectfully request both declaratory and injuntive in the following manner:

a) An immediate temporary restraining order prohibiting the continued new salary structure, as evidenced by the attached memo;

b) A permanent injuction permitting residents to attend the religious services of their choice, offered throughout the institution;

c) An immediate TRO, enjoining DOC/DOH-DHS from prohibitting them from keeping residents who are TR status from attending any celebratory events/activities;

d) an immediate order directing the defendants to permit Durmer's

wife to visit REsident Durmer with her present, acceptable state-issued
N.J. DRiver's License.

e) an immediate injuction directing the defendants to rectify the
unconstitutional living conditions presently occuring at the sTU.

f) that this Court issue a declaration/finding of ongoing unconstitu-
tional living conditions at the sTU;

g) that this Court direct the defendants supply the Plaintiffs with
a full, complete documentary accounting of the Resident Welfare Fund,
itemized, for their review and comment;

h) that this court ussue a TRO, enjoining defendants from serving
substandard and inadequate food;

i) that this Court order that at least 1 resident from each housing
unit be elected by the residents from each wing, to serve on and report
back from Interagency Oversight Board meetings, which should be held
on the STU grounds and may be attended by those elected residents.

j) that this Court review all aspects of the aLLEGED THERAPY OFFERED
AT THE STU, and have a report issued by an independant authority for
its review and any necessary changes;

k) that the Court appoint a Special Master and a requsite number of
professionals from the therapeutic community not involved in anay
way with the delivery of services in the STU, and to see to the actual
implementation of any changes that need to be done;

l) That the Court rule this action be a class action, and that the
plaintiffs be permitted to file for pro bono counsel representation;

m) that this Court order the defendants to pay plaintiff's costs of
this action, along with reasonable attorney's fees under 42 USCA §1983
28 USCA §1915d;

n) for such other relief as may be just and proper in the eyes of
the Court.

Plaintiff Jamar Burney

Burney states that, in cooperation/collusion with DOH-DHS, DOC removed
Burney from his cell on the South unit, #311, along with other residents
identfied as Amir Yancy and Tymar Murray for allegedly throwing a sub-
stance, never idetified, at a DOC officer on the wing.   Burney was
locked into his cell until September 5, 2019, when Sgt. Stapp and Sgt.
Orange moved Burney, Yancy and Murray to separate units.   Burney was
placed on the East unit, cell 103, and put on Temporary Close Custody,
(TCC).   The MAP (modified access program) placement is dated 9/4/2019
and signed by C. Klos, Program Coordinator and Dr. R. Neiman, PsyD.
One day later, on September 5, 2019, Burney was transferred from TCC
to Wing Map.   On September 6, 2019, Burney received a notice from
Marc Sim, Assistant Superintendant at ADTC , that under NJAC §10A:35-
2.3, Burney's rights to certain actions would be denied.   On 9/13/19,
that denial was confirmed in writing by Marc Sim, under the aforesaid
NJAC §10A:35-2.3.   The necessary documentation is attached for the
Court's convenience.   Burney further states that the restrictions
and denial of his rights are illegal and unconstitutional.   DOC has
cited "legitimate penological concerns" when Burney is not a prisoner
nor an inmate, making the application of the Administrative Code for
the DOC to be illegal.   Burney should have been released from TCC
within seventy-two (72) hours, which did not happen.   On 9/7/19,
Burney was denied the opportunity, per the STU guide, to take a shower.
The DOC and DOH-DHS employees violated the rights of Burney consistently
and repeatedly enforcing the NJAC, §10A:35-2.3, which is mewant solely
for use with state prisoners/inmates housed in a state prison or a
correctional facility.   The passage of NJAC 10A:35-2.3 and it's attend-
ant amendments, without the opportunity to comment by those affected

     Plaintiffs reserve the right to amend this complaint as directd by the Court at any time during the proceedings; further, that counsel when appointed shall also enjoy the right to file an amended complaint should that become necessary.   Plaintiffs attach copies of memos and letters with which to back up their complaints.

JOEL E. DURMER     DATE 10/7/19

MITCHELL D. YASUK     DATE

FRANK J. SÁNCHEZ     DATE 10-7-19

JOHN M. BANDA     DATE 10-7-19

CARLTON E. GREEN     DATE 10/7/19

BRUCE L. JENNINGS     DATE 10/7/19

JAMAR BURNEY     DATE